IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 13-cv-00400-PAB-MEH

GLENICE MARTINEZ,

    Plaintiff,

v.

JAMES QUINN, in his personal and official capacities,
PEGGY HEIL, in her personal and official capacities,
THE ESTATE OF TOM CLEMENTS,
LISA CLEMENTS, as the personal representative of the Estate of Tom Clements, and
ROGER WERHOLTZ, Acting Executive Director of the Department of Corrections, in his official capacity,

    Defendants.

---

**ORDER**

---

This matter is before the Court on the Motion to Dismiss Second Amended Complaint (Doc. #29) [Docket No. 31] filed by defendants James Quinn, Peggy Heil, the Estate of Tom Clements, Lisa Clements, and Roger Werholtz. Defendants move to dismiss the second amended complaint [Docket No. 29] filed by plaintiff Glenice Martinez pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

**I. BACKGROUND**

For the purposes of ruling on this motion, the Court assumes the truth of the following allegations, as set forth by plaintiff in her second amended complaint. *See Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007) ("We must accept all the well-pleaded allegations of the complaint as true and must construe them in the

light most favorable to the plaintiff.") (citation omitted).  Plaintiff is a paralegal who has worked on a contract basis with attorney John Pineau for the past several years. Docket No. 29 at 2, ¶ 3.  Mr. Pineau was lead plaintiff's counsel in a class action lawsuit that the Court dismissed on March 13, 2013. *Allen v. Clements*, 11-cv-03396-PAB-MEH, 2013 WL 980176 (D. Colo. Mar. 13, 2013).  The lead defendant in the case was Tom Clements, the former Executive Director of the Colorado Department of Corrections ("CDOC"), and the case challenged the constitutionality of the CDOC's treatment program for incarcerated sex offenders.  *See id*.  Plaintiff also engages in lobbying and political activities related to prisoners' rights, including testifying before state house and senate committees, for which she is not compensated.  Docket No. 29 at 3, ¶ 3.

Defendant James Quinn is an Assistant Attorney General for the State of Colorado.  Docket No. 29 at 3, ¶ 4.  Defendant Roger Werholtz is the interim Executive Director of the CDOC.  Docket No. 29 at 4, ¶ 5.  Defendant Peggy Heil is the Chief of Behavioral Health for the CDOC.  Docket No. 29 at 4, ¶ 6.  Defendant Lisa Clements is the widow of Tom Clements and the personal representative of his estate.  Docket No. 29 at 4, ¶ 5.

Citizens United for Rehabilitation of Errants ("CURE") is a national advocacy organization dedicated to criminal justice reform.  Docket No. 29 at 4, ¶ 7.  Its Colorado chapter is headed by Dianne Tramutola-Lawson.  *Id*.  The Center for Effective Public Policy ("CEPP") is a public advocacy group dedicated to helping public entities surmount challenges faced by criminal justice professionals.  Docket No. 29 at 5-6, ¶ 8. The Community Treatment and Housing Lean Project ("CTHLP") is a Colorado

interagency program dedicated to helping offenders who are released from CDOC and are homeless, unemployed, or mentally ill.  Docket No. 29 at 6-7, ¶ 10.

On February 12-15, 2013, CTHLP held a public meeting called a Rapid Improvement Event ("RIE") at the CDOC Adult Parole and Community Corrections Office in Denver.  Docket No. 29 at 7, ¶ 10.  The event was intended to "develop an interdepartmental case plan" for high risk offenders to ensure appropriate delivery of services and access to resources prior to their release.  *Id*.  The event was co-sponsored by CEPP (which is not a governmental agency), facilitated by a CEPP employee and a CDOC employee, coordinated by Renae Jordan, an employee of Tom Clements, and attended by officers and employees of CDOC and the Colorado Department of Human Services ("CDHS"), as well as members of the general public, including members of CURE.  *Id*. at 7, 9, ¶ 10, 14.  The RIE agenda did not include treatment programs for incarcerated sex offenders.  Docket No. 29 at 7-8, ¶ 10.

On December 13, 2012, Julie Wands, a CDOC employee and co-facilitator of the RIE, sent an email inviting Ms. Tramutola-Lawson to the RIE.  Docket No. 29 at 8, ¶ 11.  Ms. Tramutola-Lawson could not attend the event and suggested that plaintiff attend in her stead.  *Id*. at ¶ 12.  Ms. Jordan then sent plaintiff an invitation to the RIE.  *Id*. at ¶ 13.

Plaintiff attended the first day of the RIE and sat next to Ms. Heil.  Docket No. 29 at 9, ¶ 15.  No issues related to *Allen v. Clements* were discussed that day.  *Id*.  Plaintiff took notes at the event and intended to participate in the public policy debate.  Docket No. 29 at 10, ¶ 15.  Ms. Heil was upset by plaintiff's presence, complained to Mr. Clements about it, and demanded plaintiff be removed from the RIE.  *Id*. at ¶ 16.  Ms.

Heil acted with the intent of preventing plaintiff from expressing her opinions or engaging in discussion at the RIE. *Id*.

The Colorado Attorney General's office sets policy for attendance at events like the RIE. Docket No. 29 at 10, ¶ 17. Mr. Quinn was responsible for deciding that plaintiff should be removed from the RIE. *Id*. Mr. Quinn communicated his decision to Mr. Clements and to Ms. Heil. *Id*. Mr. Clements approached plaintiff and stated that the Attorney General's office was "concerned" about her presence at the RIE because she "works for" the attorney suing them in a class action lawsuit. Docket No. 29 at 11, ¶ 18. Plaintiff understood Mr. Clements' statements to mean that, if she did not leave the RIE immediately, she would be trespassing. *Id*. Plaintiff left against her will because she did not want to be arrested or cause a disturbance. *Id*.

Plaintiff brought this case on February 14, 2013, alleging violations of the First and Fourteenth Amendments to the United States Constitution. Docket No. 1; Docket No. 29 at 12. Plaintiff seeks declaratory relief and nominal damages from Ms. Heil and Mr. Quinn in their personal and official capacities; from Mr. Werholtz in his official capacity; and from the Estate of Tom Clements. Docket No. 29 at 12.

## II. STANDARD OF REVIEW

The Court's function on a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is sufficient to plausibly state a claim. Fed. R. Civ. P. 12(b)(6); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). In doing so, the Court "must accept all

the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Alvarado*, 493 F.3d at 1215 (quotation marks and citation omitted).

The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).

## III. ANALYSIS

Plaintiff alleges that defendants violated her First Amendment rights to free speech and association by asking her to leave the RIE. Docket No. 29 at 13, ¶ 21. Defendants respond that the actions alleged do not constitute a violation of the First Amendment. Docket No. 31.

The First Amendment conditions a government's ability to regulate speech on government or public property on the character of the space in which it seeks to implement such regulation. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). This general rule is embodied in a well established forum analysis, according to which the government's leeway in regulating speech is sharply curtailed in spaces traditionally open to public discourse and somewhat broader in spaces that are available for only limited discussion. *See id.* at 45-46. The First Amendment does not, however, protect an individual's right to participate directly in the policy-making process.

*See generally Minnesota State Bd. for Community Colleges v. Knight*, 465 U.S. 271 (1984). While the government may not curtail an individual's freedom to speak her mind on matters of policy, it need not guarantee the "right to attend a private, special purpose" meeting. Ronald D. Rotunda & John E. Nowak, 5 Treatise on Const. L. § 20.52(c) (2014). The First Amendment is applicable to the states by virtue of the Fourteenth Amendment. *Perry*, 460 U.S. at 44.

In *Minnesota State Bd. for Community Colleges v. Knight*, the Supreme Court upheld a Minnesota law preventing anyone other than the designated union representative from meeting with public employers to discuss policy decisions against a First Amendment challenge brought by community college faculty members. The Court declined to apply the classic forum analysis to what it construed as a claim asserting a right "to force officers of the state acting in an official policymaking capacity to listen to [public employees] in a particular formal setting." 465 U.S. at 282-83. The Court held that the Constitution "does not grant to members of the public generally a right to be heard by public bodies making decisions of policy." *Id*. at 283. It endorsed the current political reality in which "[p]ublic officials at all levels of government daily make policy decisions based only on the advice they decide they need and choose to hear," *id*. at 284, and cautioned that policymaking would "likely grind to a halt" if it were "constrained by constitutional requirements on whose voices must be heard." *Id*. at 285. It concluded that nothing in the First Amendment jurisprudence "suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." *Id*.

The *Knight* court relied in part on its prior decision in *Smith v. Arkansas State Highway Employees, Local 1315*, 441 U.S. 463 (1979), which upheld a state agency's policy of considering only those grievances submitted directly by employees, as opposed to grievances submitted by the union on behalf of employees. The Court held that the First Amendment imposes no duty "to listen, to respond or, in this context, to recognize the association and bargain with it." *Id*. at 465. The Court noted the absence of a claim that the state agency had prohibited employees from unionizing, from advocating for unionization, or from expressing political ideas, or that it had retaliated against employees for engaging in any of these activities, and concluded that all the agency had done "in its challenged conduct is simply to ignore the union. That it is free to do." *Id*. at 466.

In *Curnin v. Town of Egremont*, 510 F.3d 24 (1st Cir. 2007), the court upheld a local law that denied individuals who were not registered to vote in the town the right to speak at town meetings. The court explained that "[f]orum analysis of any sort is inapposite in the context of complaints about the deliberations of a legislative body" because "[n]on-legislators have no First Amendment right to address sessions of deliberating legislative bodies." *Id*. at 29. The court voiced "federalism and separation of powers concerns" inherent in enjoining a legislative body to open the floor to certain speakers. *Id*. at 30. It also noted that plaintiffs had "alternative ways to make their views known" to voters and "a number of others means of influencing local decisionmaking," including speaking at meetings of the Board of Selectmen, attending public forums, writing letters to the editors of the local newspapers, or sending direct

mailings to voters. *Id*. at 30-31; *see also Autor v. Blank*, 892 F. Supp. 2d 264 (D.D.C. 2012) (under *Knight*, government could constitutionally exclude registered lobbyists from serving in Industry Trade Advisory Committees, which provided advice on trade policy to the Secretary of Commerce); *Common Cause of Pennsylvania v. Pennsylvania*, 447 F. Supp. 2d 415, 435 (M.D. Pa. 2006) (finding that plaintiffs had no "right under the First Amendment to petition the General Assembly in advance of [the passage of the challenged bill] other than through their elected representatives").

Plaintiff frames this matter in terms of the standard forum analysis, arguing that the RIE was a designated public forum and that she was impermissibly excluded from it on the basis of her viewpoint. Docket No. 32 at 9-10. Defendants counter that plaintiff fails to state a claim because she does not allege that she engaged in any speech at the RIE and because she does not have a First Amendment right to express her views at a "policy-making event." Docket No. 31 at 6-8.[1]

---

[1] Defendants also assert that plaintiff "fail[s] to allege that she engaged in protected activity." Docket No. 31 at 8. This wording is drawn from First Amendment retaliation cases. *See, e.g.*, *McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010) ("To recover under a First Amendment retaliation claim, McBeth must establish that (1) she was engaged in constitutionally protected activity, (2) the defendant's actions caused her to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that [protected] activity, and (3) the defendant's actions were substantially motivated as a response to her protected conduct.") (internal citations and alterations omitted); *Worrell v. Henry*, 219 F.3d 1197, 1212-13 (10th Cir. 2000); *see also* Docket No. 31 at 5. However, plaintiff does not allege that defendants excluded her from the RIE in retaliation for filing lawsuits against them; rather, she alleges that defendants impermissibly excluded her from the RIE on the basis of the viewpoint they expected she would express. *See* Docket No. 29 at 12-13, ¶ 21 ("The Plaintiff had a First Amendment right to free speech and assembly to attend [the RIE]. . . . There was no content-neutral time, place and manner restriction applied to the Plaintiff when she was asked to leave the limited public forum. Therefore, the Defendants violated her First Amendment right to free speech and association by uninviting her and directing her to leave.").

Plaintiff argues that she had a right to attend the RIE because she was "expressly invited to the limited public forum (the RIE) in order to express her viewpoint, and to exchange opinions with the governmental officials who were formulating DOC policy with public input from members of the CEPP, CURE and other invitees such as the Plaintiff." Docket No. 32 at 12; *see also* Docket No. 29 at 12, ¶ 21 ("Plaintiff had a First Amendment right to free speech and assembly to attend this limited public forum."). Stressing the importance of her invitation to attend, plaintiff likens the RIE to the city hall in *Hopper v. City of Pasco*, 241 F.3d 1067 (9th Cir. 2001), where certain artists were invited to display their work and then excluded on the grounds that the selected pieces were "too controversial." In that case, the court held that the city hall had become a designated public forum in which both content- and viewpoint-based restrictions were impermissible. *Id*. at 1081. *Hopper* is inapposite here: the excluded artists were asserting the right to present their art to the public in a publicly owned space. *Id*. at 1069-70. *Hopper* does not establish the right that plaintiff claims to "exchange opinions with [] governmental officials" on a particular topic. *See* Docket No. 32 at 12. Notably, plaintiff does not allege that she has been precluded from sharing her views with members of the general public. Her invitation to attend and participate in the RIE did not create a constitutional right to engage in dialogue with CDOC policymakers.

Plaintiff argues that, because the RIE was required under Colorado's Open Meetings Law, Colo. Rev. Stat. § 24-6-402, to be open to the public, she had a

9

constitutional right to attend the meeting.[2]  Docket No. 32 at 10.  The Open Meetings Law provides that "[a]ll meetings of two or more members of any state public body at which any public business is discussed or at which any formal action may be taken are declared to be public meetings open to the public at all times."  Colo. Rev. Stat. § 24-6-402(2)(a).  These requirements apply to meetings that concern "a matter related to the policy-making function of the local public body holding or attending the meeting."  *Board of County Comm'rs, Costilla County v. Costilla County Conservancy*, 88 P.3d 1188, 1194 (Colo. 2004).  The Open Meetings Law does not grant members of the public the right to participate directly or indirectly in policy-making discussions, only to attend and observe.  *See* Colo. Rev. Stat. § 24-6-402.

Whether plaintiff's removal from the RIE violated the Open Meetings Law is a question of state law.  However, even assuming that plaintiff had a right under Colorado law to attend the RIE, such a right does not establish that the RIE would, "by government designation[,] be open to the public at large for assembly *and speech*," which is the defining characteristic of a public forum.  *Knight*, 465 U.S. at 280 (emphasis added).  In other words, the Open Meetings Law does not create a federal constitutional right to attend a policy-making event or to engage in dialogue with public officials regarding matters of public policy.

*Knight* is controlling here.  Since there is no federal First Amendment right to

---

[2]The Court notes that there is some tension between plaintiff's argument that, on the one hand, she had a right to attend the RIE because she was personally invited and, on the other hand, she had a right to attend the RIE because it was open to the general public.  Since neither of these arguments is availing, there is no need to attempt to reconcile them.

attend or participate in policy-making discussions with government officials, plaintiff fails to state a claim upon which relief can be granted. *See* 465 U.S. at 285.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the Motion to Dismiss Second Amended Complaint (Doc. #29) [Docket No. 31] filed by defendants James Quinn, Peggy Heil, the Estate of Tom Clements, Lisa Clements as the personal representative of the Estate of Tom Clements, and Roger Werholtz is GRANTED. It is further

**ORDERED** that this case is DISMISSED.

DATED March 17, 2014.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge